Opinion issued December 23, 2004










     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00339-CR




ROGER SHIELDS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 12th District Court
Grimes County, Texas
Trial Court Cause No. 14,514




MEMORANDUM OPINION
          A jury convicted appellant, Roger Shields, of sexual assault of a child, and the
trial court, after finding two prior felony enhancements true, assessed punishment at
45 years’ confinement. In two points of error, appellant contends that (1) he received
ineffective assistance of counsel at trial, and (2) the prosecutor prevented a material
witness from testifying through force, threats, or fraud. We affirm.
BACKGROUND
          The complainant, C. H., was a 14-year-old high school student at the time of
the alleged offense. C.H. testified that she was friends with Pennie Pennington’s
daughter, Tiffany, and would frequently spend the night at the Pennington home. 
Appellant was Pennie’s boyfriend.
          On the night in question, C.H. was spending the night with Tiffany. She and
Tiffany spent the evening watching television and playing video games. After
Tiffany went to bed, Pennie prepared a soda for C.H. C.H. testified that the drinks
did not taste unusual, but she began feeling dizzy after the second drink.
          After C.H. had her second drink, appellant arrived at the home. Pennie took
C.H. to the back bedroom and placed her in bed. C.H. was on top of the covers and
was fully dressed. Before C.H. went to sleep, appellant came into the room and lay
down on the other side of the bed.
          When C.H. woke up the next morning, her pants were off. When she asked
Pennie about her pants, Pennie handed her a piece of paper with appellant’s telephone
number and told C.H. to call him. Appellant told C.H. that, “he had got drunk and we
had sex, but not to tell anybody because he would get in lots of trouble.” Pennie was
in the room when C.H. called appellant.
          Later on, C.H. began to fear that she might be pregnant. C.H. told Pennie and
the two performed a home pregnancy test, which was positive. C.H. and Pennie
devised a plan whereby C.H. would get an abortion by posing as Tiffany. Appellant
offered to pay for the procedure. However, the plan was never carried out because
Pennie was afraid of getting caught.
          C.H. later went on a shopping trip with Pennie and Tiffany, and they stopped
and met appellant. Appellant told C.H. that he would take her to a doctor in Houston
who would perform an abortion. This plan was abandoned when C.H. saw a neighbor
who may have recognized her.
          C.H.’s mother became suspicious that her daughter might be pregnant when she
found a note from one of C.H.’s friends discussing abortion. C.H.’s mother, Pennie,
and appellant met at the Pennington residence. C.H. told her mother that someone
named “Mike” had impregnated her.
          C.H.’s parents began looking for “Mike.” They also removed all of C.H.’s
belongings from her room and nailed her window shut. C.H. then confided to her
mother that appellant was the father of her baby. C.H.’s mother contacted the
Sheriff’s Department.
          C.H.’s father testified that after he learned that appellant was the father of his
daughter’s baby, appellant called to apologize. On another occasion, appellant sent
a man named Chris Kurtin to offer C.H.’s father $20,000 in exchange for not filing
charges against appellant. C.H.’s father refused the offer and contacted an
investigator with the Sheriff’s Department.
          The investigator arranged for C.H.’s father to contact appellant and set up a
meeting, which was recorded. Appellant offered C.H.’s father $15,000 in cash to
drop the case. C.H.’s father and the investigator made plans to meet appellant the
next morning and exchange the cash. The investigator outfitted C.H.’s father’s car
with a tape-recording device. After a brief exchange between appellant and C.H.’s
father, the police moved in and arrested appellant, who was carrying approximately
$2,000 in cash.
          DNA samples taken from appellant, C.H., and the baby, after its birth, revealed
that there was a 99.99% probability that appellant was the father of C.H.’s baby.
INEFFECTIVE ASSISTANCE OF COUNSEL
          In point of error one, appellant contends that he received ineffective assistance
of counsel at trial because his attorney “never retained or consulted an expert to test
the validity of [the DNA] results.” The legal standard set out in Strickland v.
Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), applies to appellant’s ineffective
assistance claim. To prevail on his claim, appellant must first show that his counsel’s
performance was deficient. Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002). Specifically, appellant must prove, by a preponderance of the evidence, that
his counsel’s representation fell below the objective standard of professional norms. 
Id. Second, appellant must show that this deficient performance prejudiced his
defense. Id. Appellate review of defense counsel’s representation is highly
deferential and presumes that counsel’s actions fell within the wide range of
reasonable and professional assistance. Id. Under normal circumstances, the record
on direct appeal will not be sufficient to show that counsel’s representation was so
deficient and so lacking in tactical or strategic decision-making as to overcome the
presumption that counsel’s conduct was reasonable and professional. Id. Rarely will
the trial record contain sufficient information to permit a reviewing court to fairly
evaluate the merits of such a serious allegation: “[i]n the majority of cases, the record
on direct appeal is simply undeveloped and cannot adequately reflect the failings of
trial counsel.” Thompson v. State, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999).
          Appellant, citing Winn v. State, 871 S.W.2d 756 (Tex. App.—Corpus Christi
1993, no pet.), argues that the failure to locate an expert forensic witness constitutes
deficient performance. However, we find Winn distinguishable on its record. In
Winn, the defendant’s counsel called an expert witness to testify at the evidentiary
hearing on the defendant’s petition for writ of habeas corpus.


 Id. at 760. The expert
testified that the victim’s death was more consistent with suicide, rather than
homicide. Id. The court of appeals stated that trial counsel “could have developed
a better defense had he taken the time to contact other experts and thereby impeach
the State’s experts who concluded the death was homicide.” Id. By failing to
develop such expert testimony before trial, the Corpus Christi court of appeals held
that trial counsel had rendered deficient performance. Id.
          In this case, however, there was no evidence presented at the motion for new
trial hearing, or anywhere else in the record, about what type of expert testimony trial
counsel should have procured or how hiring an expert would have impeached the
expert testimony provided by the State. There is nothing in the record to show that
trial counsel’s decision not to call an independent expert witness was not a sound trial
strategy. Appellant fails to meet the first prong of the Strickland test, because he has
not shown that counsel’s performance was deficient. Accordingly, we overrule point
of error one.
MATERIAL WITNESS PREVENTED FROM TESTIFYING
          In point of error two, appellant contends that the trial court erred in denying his
motion for new trial, which was based on an allegation that the State had prevented
a material witness from testifying through force, threats, or fraud. Specifically,
appellant contends that the State prevented Pennie Pennington from testifying at the
punishment hearing by forcing her to invoke her Fifth Amendment right against self-incrimination.
          We review the trial court’s ruling on a motion for new trial for an abuse of
discretion. Williams v. State, 911 S.W.2d 191, 195-96 (Tex. App.—Houston [1st
Dist.] 1995, pet. ref’d). Only when the trial court’s decision is so clearly wrong as to
lie outside that zone within which reasonable persons might disagree will we reverse
its decision on a motion for new trial. State v. Baldaras, 915 S.W.2d 913, 916 (Tex.
App.—Houston [1st Dist.] 1995, no pet.). 
          A defendant must be granted a new trial “when a material defense witness has
been kept from court by force, threats, or fraud.” See Tex. R. App. P. 21.3(e). The
underlying rationale for this provision is to provide relief in those “rare instances in
which a material witness is deceived or tricked into not appearing in court.” 
Rodriguez v. State, 21 S.W.3d 562, 567 (Tex. App.—Houston [14th Dist.] 2000, pet.
ref’d).
          Attached to appellant’s motion for new trial was the affidavit of Jon Fultz, the
attorney for Pennie Pennington, who was charged as a codefendant in this case. Fultz
stated that at the time of appellant’s trial, Pennie had a plea bargain on the table,
which was conditioned on her agreement that “if called as a witness in Roger Shields’
case, she would testify truthfully.” Fultz’s affidavit further alleged that “[t]he District
Attorney advised that if Ms. Pennington’s testimony appeared inconsistent with the
facts as he knew them, the plea bargain agreement would be withdrawn.”
          Pennie Pennington was under subpoena during the guilt-innocence phase of the
trial; however, neither the State nor the defense attempted to call her as a witness. In
fact, defense counsel took the extraordinary step of having appellant state on the
record that he did not wish to call Pennie as a defense witness. However, at the
punishment phase of the trial, appellant called Pennie, who, on the advice of counsel,
invoked her Fifth Amendment right against self-incrimination. Appellant contends
that the State threatened to withdraw Pennie’s plea agreement if she testified on
behalf of appellant. Appellant’s brief alleges that “[t]he coercion of having the plea
bargain offer withdrawn was what kept [Pennie] off the witness stand.”
          However, Pennie persisted in asserting her Fifth Amendment right against self-incrimination, even after she received the benefit of her plea agreement by pleading
guilty to a lesser offense and receiving a probated sentence. The record shows that
after she pleaded guilty, Pennie was again called to testify at the hearing on
appellant’s motion for new trial, and again, on the advice of counsel, she invoked her
Fifth Amendment right against self-incrimination. Thus, even when the State could
no longer “threaten” her with withdrawing her plea agreement, Pennie chose not to
testify.
          Under these circumstances, the trial court could have reasonably concluded that
Pennie Pennington voluntarily invoked her Fifth Amendment rights at the punishment
hearing and was not “threatened” into doing so by the State. As such, the trial court’s
denial of appellant’s motion for new trial was not an abuse of discretion.
          Accordingly, we overrule point of error two.
          We affirm the judgment of the trial court.



                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).